IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 3, 2009

## MONIQUE Y. CROOM v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Chester County**
**No. 08-CV-5     Donald H. Allen, Judge**

_____

**No. W2008-01635-CCA-R3-PC  - Filed September 29, 2009**

_____

The petitioner, Monique Y. Croom, appeals the denial of post-conviction relief, contending that she received ineffective assistance of counsel based on trial counsel's failure to:  (1) maintain proper records, (2) adequately investigate her case and interview certain witnesses, (3) expedite her mental health evaluation, and (4) explain the types of homicide and the difference between consecutive and concurrent sentencing.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

George Morton Googe, District Public Defender; and Kandi K. Collins, Assistant Public Defender, Jackson, Tennessee, for the petitioner-appellant, Monique Y. Croom.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred L. Earls, Assistance District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner was indicted for first degree premeditated murder, attempted first degree premeditated murder, felony murder, aggravated burglary, and aggravated assault.  On August 14, 2007, the petitioner pleaded guilty to second degree murder, aggravated burglary, and aggravated assault in the Circuit Court of Chester County, and the other counts in the indictment were dismissed.  The trial court sentenced the petitioner as a violent offender to fifteen years at 100% for the second degree murder conviction.  The court also sentenced the petitioner as a Range I, standard offender to three years for the aggravated burglary conviction and five years for the aggravated assault conviction, which were to be served concurrently.  The trial court ordered that the five-year sentence for aggravated assault be served consecutively to the fifteen-year sentence for second degree murder, for an effective sentence of twenty years.

The petitioner filed a timely pro se petition for post-conviction relief. The petitioner was subsequently appointed counsel, who filed an amended petition for post-conviction relief on the petitioner's behalf. Following the evidentiary hearing, the trial court issued a written order denying post-conviction relief on July 21, 2008, and the petitioner filed a timely notice of appeal.

## FACTUAL BACKGROUND

**Plea Submission Hearing.** The petitioner informed the trial court that she wished to enter a guilty plea. She stated that her attorney had reviewed the plea agreement with her and that she understood that she was pleading guilty to second degree murder, aggravated burglary, and aggravated assault. She stated that she understood the information contained in the plea agreement that she signed.

The trial court informed the petitioner that she needed to ask questions of the court, her attorney, or the State if there was anything that she did not understand during the plea submission hearing. The trial court asked her if she was under the influence of alcohol, drugs, or medication that might affect her judgment. The petitioner responded that she had taken Xanax, which had been prescribed by a physician; however, she stated that the Xanax would not affect her ability to make decisions at this hearing. She also stated that she had taken another prescribed medication, an antidepressant, but understood the consequences of her guilty pleas. Trial counsel confirmed that he had been representing the petitioner for approximately nineteen months, and his representation began within a week of the offenses in this case. The trial court informed the petitioner that she had the right to plead not guilty or to continue her plea of not guilty, the right to a speedy and public trial, the right to a bench trial if she wished to waive her right to a jury trial, the right to the assistance of counsel at every critical stage of her case including her trial, and the right to have counsel appointed if she could not afford to hire one. The petitioner stated that she understood all of these rights. She also stated that she understood that by pleading guilty she was giving up her right to a trial and giving up her right to an appeal. The petitioner also acknowledged that her guilty pleas meant that she was admitting she committed the offenses of second degree murder, aggravated burglary, and aggravated assault and that once her guilty pleas were accepted, she could not withdraw them. The petitioner stated that she was pleading guilty freely and voluntarily without force, pressure, threats, or promises.

The trial court explained that the offense of second degree murder is a Class A felony with a sentence range of fifteen to twenty-five years for a Range I, standard offender. The court also explained that the offenses of aggravated burglary and aggravated assault were C felonies with a sentence range of three to six years for a Range I, standard offender. The trial court stated that the State was recommending a sentence of fifteen years at 100% for the second degree murder offense. The State also recommended sentences of three years for the aggravated burglary and five years for the aggravated assault offenses at 30% to be served concurrently to one another. The five-year sentence was to be served consecutively to the fifteen-year sentence for an effective sentence of twenty years.

Trial counsel asked some questions of the petitioner during the hearing. The petitioner acknowledged that trial counsel talked to her about defense strategies, her mental health history, and his investigation of witnesses. She stated that trial counsel had given her copies of everything he had received and had met with witnesses Lashontae Adkins and Tabitha Hopper. She also stated that trial counsel had been unable to locate an eyewitness, Monica Warlick, but had told her that the State had subpoenaed Warlick so he expected her to testify at trial. The petitioner said that trial counsel had talked to her about the range of punishment for offenses and about the effect of a jury trial versus a guilty plea. She said she was confident that trial counsel had done everything he could in her case, and she acknowledged that he had "turn[ed] over every rock."

The petitioner informed the trial court that she was "completely satisfied" with the representation of trial counsel, and she was fully aware of the consequences of her guilty plea. The State summarized the facts supporting the offenses to which the petitioner was pleading guilty:

> [T]he State would show at about 11:00 on February the 24th of the year 2006, 911 calls were received by the dispatch here in Henderson. Law enforcement was dispatched to [the victim's residence]. When they arrived, it was discovered that [the petitioner] had gone to the home of her estranged boyfriend, that being Gary Phelps, with whom they had a child together, and about that time she did get into an altercation which started either in the yard or on the porch. [The petitioner] is alleged to have charged and assaulted Tabitha Hopper and then they went into the house where the assault continued. While in the house, threats were made [by the petitioner] that she would kill Ms. Hopper. Threats were also alleged to have been made [by the petitioner that she] would kill the deceased, Gary Phelps. Sometime during the altercation, the fight again moved outside to the porch area. [The petitioner] after the fight was broken up did go back into the house and come out with a pistol and did make statements to the effect that she would shoot Ms. Hopper or Mr. Phelps. There was a struggle involv[ing] with the gun there and during that struggle, Mr. Phelps was shot under the arm in the rib area which resulted – he walked from his yard to the road where he collapsed and died.
>
> All of that occurring here in Chester County.

The petitioner acknowledged that the facts were substantially correct. The trial court accepted the recommendations made by the State and made the following ruling:

> In this case, the Court finds that Ms. Croom's decision to plead guilty here today . . . has been freely, voluntarily, knowingly and intelligently made and that there is a factual basis for the plea on all counts. Also, the Court finds that Ms. Croom has had the advice of an attorney . . . with whom she is satisfied. The Court will accept the guilty plea and will also make the plea bargain agreement the order[] of this Court.
>
> Ms. Croom, I do adjudicate you guilty of this offense of Second Degree Murder and for this offense you are hereby ordered to serve a period of incarceration of 15 years as a 100

percent, non-parole/non-probatible status. You'll serve 15 years in the Tennessee Department of Correction[].

Also, you are adjudicated guilty of Aggravated Burglary and for that offense you are hereby ordered to serve a period of three years as a Range [I,] standard offender. That is 30 percent release eligibility will be set and that will be served in the Tennessee Department of Correction[].

You are also adjudicated guilty of Aggravated Assault against Ms. Tabitha Hopper and for that offense you'll serve five years as a Range [I,] standard offender, that being 30 percent release eligibility status, in the Tennessee Department of Correction.

At this time, Count 3 and Count 5 will be dismissed.

Now, as far as this five year sentence, this sentence is consecutive to the 15 year sentence on Count 1. You'll have a total effective sentence of 20 years that you'll serve in the Tennessee Department of Correction[].

. . . .

**Post-Conviction Hearing.** The petitioner and trial counsel were the only witnesses to testify at the post-conviction hearing. The transcript from the plea submission hearing was made an exhibit at this hearing.

Trial counsel testified that he had been licensed to practice law since 1996, had tried more than forty or fifty criminal trials during his career, and was certified as a trial specialist. He stated that the petitioner's family retained him within a week of her arrest, and he began representing her at the General Sessions level on these charges and continued to represent her until she entered her guilty pleas. Although counsel could not recall the exact number of times he met with petitioner, he stated that he typically made notes at each meeting. Trial counsel said that he had "some notes early on about us talking about the facts of the case and basically what she was charged with." Based on his notes from February 28, 2006, four days after the offenses, trial counsel stated that he discussed "Murder 1, Murder 2, Voluntary Manslaughter, Negligent Homicide, and Reckless Homicide" with the petitioner. According to his notes, he wrote the elements down for each of these offenses, except reckless homicide, and wrote the range of punishment beside each offense. He stated there were other places in his file where he had written the elements of the applicable offenses and the accompanying release eligibility information.

Trial counsel stated that he requested a mental evaluation, and the State had no opposition. The petitioner had been receiving mental health treatments in the jail at the General Sessions level. He stated that the petitioner's mental problems were severe, and he was planning on emphasizing them to the jury if the petitioner's case went to trial. His defense strategy regarding the petitioner's mental problems was that "she had suffered some abuse by the victim in this case . . . both emotional and physical and sexual" which was "relevant to her state of mind at the time of the crime." He also wanted to argue that she had diminished capacity. He met with the petitioner at the beginning of her case and "then . . . there was a real block of time between the beginning and end of [her] General

-4-

Sessions [case], more than I've seen on a murder case, because there was a mental evaluation and there was a real complication in getting that done." Trial counsel stated that the petitioner's mental evaluation could not be done by a local provider because of a conflict, and Dr. Zager from Memphis was assigned to do the evaluation. Unfortunately, the petitioner's evaluation did not "fit on [Dr. Zager's] usual grid and it kept not getting done." He added, "Some of it was just the complication of [the petitioner's] history . . . , and of her problems, but some of it was just plain logistics." He said that he checked with Dr. Zager about the petitioner's evaluation "[a] couple of times" to inquire about the delay. He did not receive the results from the mental evaluation for several months. The results showed that the petitioner was competent to stand trial.

Regarding the petitioner's guilty pleas, trial counsel stated that the petitioner's family "never wanted her to [plead guilty]," but the petitioner "wanted to plea[d] from the beginning if we could get a deal down to what we thought it ought to be." He stated that he received an offer from the State, and he was able to convince the State to offer an even lower sentence for the petitioner.

Trial counsel stated that he personally believed that the petitioner was competent to plead guilty and understood the consequences of her plea. He stated that a family member helped the petitioner make the decision to plead guilty, although he was prepared to go to trial if she refused to enter guilty pleas. Trial counsel stated that it was the petitioner's decision to plead guilty. At the plea submission hearing, he said the trial court advised her of the rights she was waiving, and he asked her questions about the quality of his representation. The petitioner acknowledged that trial counsel had done everything she had asked of him.

Trial counsel said that the State provided him with open file discovery, and he numbered the pages he received and provided the petitioner with a copy of this discovery. Although he did not have a record of sending the petitioner the preliminary hearing transcript, he believed that he sent it to her as soon as he received it since it was in his file.

Trial counsel stated that he had some difficulty in locating an eyewitness, Monica Warlick. At the time, Warlick had an outstanding arrest warrant and frequently changed addresses. He discussed the need for a continuance with the State because he was unable to locate Warlick, and the State informed him that it had served Warlick with a subpoena to testify at trial. He said the State "was either going to have [Warlick] get in contact with me or I was going to get to talk to her at trial time." He stated that if Warlick failed to show up at trial, he would have asked for a continuance on that basis. He said that the only other witnesses that the petitioner mentioned to him were LaShantae Atkins and her brother Rodney, and he was confident that these individuals would testify at trial.

Regarding the medication that the petitioner was taking at the time of the plea submission hearing, trial counsel stated that he believed that she needed to take this medication to keep her thoughts from racing. He said, "My feeling [was] she needed [the medications,] and if she didn't get them then that would have been a problem."

The petitioner testified that she did not understand her plea agreement because she thought her sentences would be served concurrently rather than consecutively. She admitted that trial counsel and the trial court explained many things to her regarding her plea, but she got concurrent and consecutive sentences "mixed up." The petitioner claimed that trial counsel explained the

elements of the applicable offenses but neglected to tell her the sentence range for second degree murder. She said she was taking Zanax and another antidepressant at the time of the plea submission hearing, but the only side effect from the medication was that it made her tired.

The petitioner testified that she met with Dr. Zager regarding her mental evaluation only once prior to pleading guilty. She felt like trial counsel should have insisted that Dr. Zager meet with her more than one time. She also testified that trial counsel never provided her with a copy of the preliminary hearing. However, she acknowledged that she did receive a copy of the police report and indictment.

The petitioner recalled meeting with trial counsel only four or five times. She stated that she wrote letters to trial counsel, but he never responded. The petitioner also requested that trial counsel interview her brothers because "[t]hey lived with me and [the victim] at the time, . . . and they could have pretty much told, you know, what happened to me . . . on a daily basis." When asked if there was anything that she had asked trial counsel to do that he had not done, she stated, "No. I don't think."

The petitioner acknowledged that she signed her plea agreement, which stated that she was receiving a twenty-year sentence. However, she claimed that she did not read it before signing her name. She stated that trial counsel forced her to plead guilty:

> I . . . told [trial counsel] that I wanted to go to trial and then he was like, well, let's just think about it and stuff like that. I was like, no, I want to go to trial. And then that Monday – he said I tell you what, you call me Monday and you tell me what you want to do. They let me out up front and I called him and I said I wanted to go to trial. And then he kind of did like a sigh. So it was like – I was just like, "Forget it. I'll take the plea." But I really wanted it [to] go to trial.

She added, "I felt like if I would have [gone] ahead and [gone] to trial that [trial counsel] probably wouldn't have represented me as well . . . because he [was] telling me, "'Ms. Croom, this is the best offer for you.'" She said that she did not inform the trial court about her concerns regarding trial counsel "[b]ecause [she] was scared."

The petitioner acknowledged that the trial court went over the details of the pleas with her prior to accepting her guilty pleas, including the fact that she was receiving a sentence of fifteen years to be served at 100% for the second degree murder offense and a sentence of five years for the aggravated burglary offense, which were to be served consecutively for an effective sentence of twenty years. At the conclusion of the hearing, the trial court denied the petitioner post-conviction relief.

## ANALYSIS

**Standard of Review.** Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). Our supreme court has held:

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901, n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would

not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); see also Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

**Ineffective Assistance of Counsel.** The petitioner claims that trial counsel failed to: (1) maintain proper records, (2) adequately investigate her case and interview certain witnesses, (3) expedite her mental health evaluation, and (4) explain the types of homicide and the difference between consecutive and concurrent sentencing. The State argues that the petitioner failed to prove by clear and convincing evidence that trial counsel's performance was deficient and prejudicial. We agree with the State.

First, the petitioner alleges that trial counsel failed to maintain adequate records regarding her case and failed to provide documentation that he had given her a copy of the transcript from the preliminary hearing. During the post-conviction hearing, trial counsel referred to his notes that detailed the substance of his meetings with the petitioner. He also stated that it was his general practice to give all clients all discovery received from the State. He further testified that he believed he gave the petitioner a copy of the transcript from the preliminary hearing because he had a copy of it in his records. Although the petitioner claimed that she had not received a copy of the transcript from the preliminary hearing at the post-conviction hearing, she had previously acknowledged that trial counsel supplied her with copies of all the information he received in her case at the plea submission hearing. At the conclusion of the post-conviction hearing, the trial court determined that it had given petitioner numerous opportunities to discuss any problems or ask questions regarding trial counsel's performance. It noted that the petitioner failed to discuss any concerns regarding trial counsel and expressed a desire to plead guilty. After reviewing the record, we conclude that the petitioner did not show by clear and convincing evidence that trial counsel failed to maintain adequate records or failed to provide a copy of the transcript from the preliminary hearing. Accordingly, the petitioner has failed to show that trial counsel's actions were deficient or prejudicial on this issue.

Second, the petitioner alleges that trial counsel failed to adequately investigate her case and failed to interview certain witnesses. She specifically contends that trial counsel failed to interview her brothers and failed to locate the eyewitness, Monica Warlick. However, at the plea submission hearing, trial counsel questioned petitioner regarding the adequacy of his representation, and the petitioner stated that trial counsel had done everything he could in her case. Before entering her guilty pleas, she also acknowledged that trial counsel had told her that although he was unable to locate Warlick, Warlick would likely be at trial because the State had served her with a subpoena. Finally, at the plea submission hearing, she stated that trial counsel had interviewed the relevant witnesses. The record shows that trial counsel interviewed the appropriate witnesses and made repeated attempts to contact the eyewitness, Monica Warlick. We note that neither Warlick nor petitioner's brothers testified at the post-conviction hearing. This court has concluded that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The post-conviction court determined that the petitioner did not show that trial counsel rendered ineffective assistance of counsel on this issue. After reviewing the record, we conclude that the petitioner did not show by

clear and convincing evidence that trial counsel failed to investigate her case or failed to interview witnesses. Accordingly, the petitioner has failed to show that trial counsel's actions were deficient or prejudicial on this issue.

Third, the petitioner alleges that trial counsel failed to expedite her mental evaluation. She also asserts that she met with Dr. Zager regarding her evaluation only once. The record includes three letters from Dr. Zager updating the trial court about the petitioner's mental health evaluation. In one of these letters, Dr. Zager stated that she "need[ed] more time to see Ms. Croom again." In another letter, Dr. Zager requested "four more weeks to secure and review Ms. Croom's medical records." At the post-convicting hearing, trial counsel testified that he initially requested the petitioner's mental evaluation and explained that the petitioner was unable to be evaluated by a local provider because of a conflict. He explained that the petitioner's evaluation did not "fit on [Dr. Zager's] usual grid and it kept not getting done." He testified that he checked with Dr. Zager about the petitioner's evaluation "a couple of times" to inquire about the delay. He also testified that he believed the delay stemmed from the petitioner's mental health history and the logistics of getting Dr. Zager to see her. Trial counsel further stated that he met with Dr. Zager and the State to discuss the petitioner's case. The post-conviction court determined that the petitioner failed to prove that trial counsel rendered ineffective assistance of counsel regarding the mental evaluation. The record shows that trial counsel initiated the mental health evaluation and remained in touch with Dr. Zager throughout evaluation process. After reviewing the record, we conclude that the petitioner failed to prove by clear and convincing evidence that trial counsel failed to expedite the mental evaluation. Accordingly, the petitioner has failed to show that trial counsel's actions were deficient or prejudicial on this issue.

Finally, the petitioner alleges that trial counsel failed to explain the types of homicide and failed to explain the difference between consecutive and concurrent sentencing. At the post-conviction hearing, the petitioner testified that she did not understand the difference between concurrent and consecutive sentences. She also stated that trial counsel did not explain the sentencing range for second degree murder. She stated that she understood that her sentence was twenty years but believed the fifteen-year sentence and the five-year sentence would be served concurrently. However, trial counsel testified that he explained the different types of homicide and the sentence ranges of the applicable offenses many times. His notes from the February 28, 2006 meeting with the petitioner showed that he discussed the elements of the relevant offenses and the sentence ranges, and he stated that this information appeared in his file in other places as well. He also said that it was the petitioner's decision to plead guilty and that she had wanted to plead guilty from the very beginning of her case, even though her family wanted her to go to trial. At the plea submission hearing, the petitioner acknowledged that she was "completely satisfied" with trial counsel's representation. Even at the post-conviction hearing, she admitted that trial counsel had done everything that she asked of him. After reviewing the record, we conclude that the petitioner failed to prove by clear and convincing evidence that trial counsel failed to explain the types of homicide and failed to explain the difference between consecutive and concurrent sentencing. Accordingly, the petitioner has failed to show that trial counsel's actions were deficient or prejudicial on this issue.

We note that the record from the plea submission hearing shows that the trial court explained all of the petitioner's rights, each charge of the indictment, and all possible penalties applicable to the petitioner. The trial court specifically asked her if trial counsel had rendered effective assistance, and she responded affirmatively. The petitioner testified that she understood the charges against her and that she wished to plead guilty. The trial court then outlined the details of the plea agreement, emphasizing the lengths of each sentence and the fact that the fifteen-year sentence would be served consecutively to the five-year sentence. Accordingly, we conclude that the petitioner entered her guilty pleas freely and voluntarily.

The ruling of the post-conviction court is supported by the record. We conclude that the petitioner failed to prove by clear and convincing evidence that she received ineffective assistance of counsel.

**Conclusion.**   Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE